**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **JONATHAN FIELDS** )| |
| ) | |
| **Plaintiff,** ) | |
| ) | **NO:** |
| **v.** ) | |
| ) | **JURY DEMAND** |
| **SOHO HOUSE NASHVILLE, LLC** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

This lawsuit is against Soho House Nashville ("Defendant" or "Soho House") for its acts of race discrimination, retaliation, and unlawful wage practices targeted at Jonathan Fields ("Plaintiff" or "Mr. Fields"). Soho House's conduct violated the Tennessee Human Rights Act, Section 1981, and the Fair Labor Standards Act. Plaintiff states for his Complaint the following:

### PARTIES

1. Jonathan Fields is a citizen and resident of Tennessee residing in Davidson County.

2. Soho House Nashville, LLC is a Delaware Corporation who maintains its principal business office at 515 W. 20th St., New York, NY 10011-2831. Soho House Nashville maintains business operations in Tennessee at 500 Houston St, Nashville, TN 37203. Unless waiver of service is accepted by Counsel for Defendant, Defendant will be served at its local registered agent: Corporate Creations Network, Inc., 205 Powell Pl, Brentwood, TN 37027-7522.

### JURISDICTION AND VENUE

3. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

4. Venue is proper under 28 U.S.C. § 1391.

5. This is an action for all available economic damages, compensatory damages, punitive damages, declaratory relief, equitable relief, reinstatement, and injunctive relief under 42 U.S.C. §1981 ("Section 1981"), Tennessee Human Rights Act ("THRA"), and the Fair Labor Standards Act ("FLSA").

6. Plaintiff will also file a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff reserves the right to later amend this Complaint to include violations under Title VII of the Civil Rights Act of 1964 ("Title VII") upon administrative exhaustion, investigation, and the issuance of a notice of right to sue.

## FACTS

7. Soho House is a private member club with local operations at 500 Houston St, Nashville, TN 37203.

8. The Nashville location is a large facility that includes bedrooms/hotel rooms, pools, gyms, cinemas, and performance spaces.

9. Soho House claims that it is caters to members in the creative arts, media, music, politics, and other spheres to provide a place for gathering, socializing, and fellowship.

10. Plaintiff is an African American (Black) male.

11. Plaintiff was employed as a Membership Manager.

12. Plaintiff contributed greatly to the growth and success of Soho House. Plaintiff provided members and guests at Soho House a wonderful experience on a daily basis. Plaintiff maintained positive working relationships with his peers, subordinates, and guests of Soho House.

13. Plaintiff was directly responsible for adding over 250 members to Soho House, which added substantial revenue to Soho House. Plaintiff's membership enrollment numbers exceeded the enrollment numbers of his Caucasian peers in the same or similar positions.

14. Plaintiff regularly leveraged his relationships in the music and entertainment industry to bring well-known music talent to the Soho House, including: Kirk Franklin, Wale, Too Short, and others. Plaintiff's use of his personal connections to bring VIP and prominent guests to Soho House exceeded his Caucasian peers performance of said tasks during his employment.

15. In addition to his on-site Membership Manager duties, Soho House made Plaintiff responsible for increasing its social media presence and demanded the performance of off-site work by Plaintiff on a daily basis. Plaintiff's performance of his additional social media-related responsibilities increased the social media following of Soho House from 1,500 to 12,000 in less than 2 months. Defendant demanded that Plaintiff perform social media duties, but it failed to provide Plaintiff any additional compensation or overtime payment for his job performance. Plaintiff's Caucasian peers were not required to perform social media duties off-the-clock without receiving any additional compensation or overtime pay.

16. Soho House trains and directs members of management to go above-and-beyond to assure that guests have a wonderful experience each visit. Mr. Fields and those under his direction were responsible for assuring that patrons left Soho House with a positive impression.

17. Soho House trains managers and employees to take curative action to rectify situations were a member or guest complains about a poor experience. Authorized curative actions include paying for (comp'ing) means; performing tasks beyond the job description or standard policies; and making other necessary accommodation to leave visitors with a positive impression.

18. Plaintiff made personal payments of meals, drinks, and other accommodations to assure guest satisfaction on multiple occasions. Soho House did not reimburse Plaintiff for his work-related efforts to accommodate guests and provide a positive experience unlike his Caucasian peers.

19. Soho House Nashville also maintained a culture that was overtly biased against black members, guests, and artists. During the employment of Mr. Fields: (a) Soho House regularly refused to comp or pay-for-performance black artists appearing at Soho House, while Caucasian artists were repeatedly paid and comp'd by Soho House; (b) black members and VIP guests were provided less favorable service and accommodation than white members and VIP guests; (c) black vendors [such as DJ's or personal trainers] were habitually delayed or denied payment and afforded less favorable treatment, while white individuals were swiftly compensated and treated favorably; and (d) black VIP members or guests were not shown the same level of customer service while in the facility by white staff and members of management.

20. Prominent music executive Phil Thornton and many prominent black artists who visited the house – including Kirk Franklin, Tevin Campbell, Wale, Too $hort, and Tamar Braxton – all received substandard and disparate treatment from Caucasian managers and employees at Soho House in Nashville. Soho House admonished Mr. Fields efforts to provide black VIP members and guests with an experience comparable to the service received by their Caucasian contemporaries of a similar status. Managers were not admonished for making curative efforts to provide white VIP members and guests a quality experience.

21. Soho House was a work environment riddled with bias and discriminatory acts.

22. Soho House management regularly targeted Plaintiff with an abundance of concocted criticisms and accusations related to comp'ing meals, alleged drinking on the job, and adherence with kitchen protocols that similarly situated white members of management were not targeted despite engaging in the same – and substantially worse—alleged actions.

23. Soho House and Caucasian members of management directly targeted Plaintiff with race-based comments and actions which contributed to an overall hostile work environment on the

4

basis of race for Plaintiff. The comments and actions occurred weekly and extended for a period of multiple months over the entire duration of his employment.

24.     Caucasian members of management and leadership would regularly respond to professional comments made by Mr. Fields by saying, "For Shizzle My Nizzle" (translated: For sure, my n---ger).  Caucasian members of management regularly referred to Mr. Fields as "homie" or similarly unprofessional slang during professional interactions. Communications with Plaintiff's white peers was far more professional and respectful.

25.     Plaintiff was called "the N-word" by Caucasian members, guests, and management on multiple occasions.  Each time Plaintiff raised an incident to Soho House, its management and/or human resources agents ignored the acts and swept it under the rug.

26.     Soho House discriminatorily held Mr. Fields personally accountable for the actions of any black individual who visited the facility, including: (a) holding him responsible for black members who smoked marijuana in the facility, without holding white managers responsible for the same conduct performed by Caucasian patrons; (b) holding him personally responsible when black guest walked out, but not similarly holding white managers to the same scrutiny and criticism when white individuals performed the same conduct;  (c) criticizing him personally when black guests did not put a credit card on file, while white managers did not face similar criticisms for the conduct of white guests; (d) criticizing Mr. Fields for any mistake made by a black employee, while white managers were not similarly criticized for mistakes of white employees; and (e) and an abundance of other similar disparities.

27.     On multiple occasions, Mr. Fields opposed the disparate treatment targeted at him and against black members/guests to Soho House management and human resources.

28.	The complaints were repeatedly ignored and dismissed by Soho House management and HR.  Defendant made no legitimate effort to investigate, prevent, or correct the conditions complained of by Plaintiff on behalf of himself, black employees, guests, artists, talent or vendors. Comments made at the time of Plaintiff's complaints demonstrated retaliatory animus against him for opposing the complained-of disparate treatment.

29.	Shortly after Plaintiff raised a complaint of disparate treatment [for the reasons detailed in the preceding paragraphs] to management/human resources, Soho House terminated Plaintiff in response to his complaint(s).

30.	Defendant's asserted reason(s) for Plaintiff's termination are false, pretextual, and concocted.  Defendant claimed that Plaintiff was fired for: (1) going into the kitchen and making prominent gospel artist Kirk Franklin a salad; (2) comp'ing a tab for Kirk Franklin and associates after a negative experience at Soho House; (3) having a drink on the job; and (4) ordering $15 lemon bites while working.

31.	Similarly situated Caucasian peers performed the same alleged conduct, including much worse, and went without reprimand or discipline by Defendant. For example, Mr. Fields raised complaints of Caucasian employee Sina Georgee drinking on the job; buying and serving personally purchased bottles of alcohol to guests and employees; and making social media posts drinking on the job. In response to receiving the complaint, Georgee was not disciplined or terminated by Defendant.

32.	Defendant's actions were discriminatory, willful, malicious, and committed with reckless indifference to Plaintiff's right to voice opposition to workplace discrimination, harassment, and intimidation on the basis of race. Defendant's actions have caused Plaintiff to suffer severe emotional, financial, and mental harm for which this lawsuit attempts to remedy.

<h1 style="text-align:center"><u>CLAIMS AND CAUSES OF ACTION</u></h1>

<h2 style="text-align:center">THRA and Section 1981</h2>

<h3 style="text-align:center">Retaliation, Discrimination, and Hostile Work Environment</h3>

33. Plaintiff incorporates by reference all preceding paragraphs in this Complaint.

34. Plaintiff contends that Defendant discriminated against him in the terms and conditions of his employment on the basis of race in violation of Title VII, the THRA, and Section 1981. The discrimination was repeated, retaliatory, and persisted over an extended period of time.

35. Plaintiff voiced opposition to the discrimination, harassment, and hostile work environment at Soho House on multiple occasions.

36. Defendant responded to Plaintiff's protected conduct with increased hostility and disdain, and additional acts of intimidation, discrimination, and harassment – including termination.

37. Defendant's actions were committed with reckless disregard to Plaintiff's right to be free from discriminatory and retaliatory treatment in response to voicing opposition to discriminatory employment practices. Accordingly, Defendant deprived Plaintiff of equal employment opportunities, benefits, and terms and conditions of employment.

38. Plaintiff has suffered, and continues to suffer, monetary and nonmonetary damages that this lawsuit seeks to remedy.

39. Plaintiff is entitled to an award of back pay and benefits, compensatory and other damages, punitive damages, injunctive relief, attorneys' fees and costs, and all other appropriate damages, remedies, and other relief available under the THRA and Section 1981.

**FLSA**

40. Plaintiff incorporates by reference all of the preceding paragraphs in this Complaint.

41. Defendant has violated the FLSA, 29 U.S.C. § 201, et seq., including but not limited to 29 U.S.C. § 207, by failing to pay overtime wages [and reimburse for personally paid compensation] for hours Plaintiff worked in excess of (40) hours in given workweeks.

42. The FLSA, 29 U.S.C. § 207 requires employers to pay employees one and one-half time the regular rate of pay for all hours worked in excess of (40) hours in a workweek and reimburse (so as to avoid overtime and wage violations).

43. Defendant knew or had reason to know that Plaintiff worked over 40 hours in workweeks without overtime compensation.

44. Defendant's actions, policies and/or practices described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff within the parameters of the law.

45. Defendant knew and showed reckless disregard for the fact that Defendant denied Plaintiff entitled wages, reimbursements or other related compensation.

46. Pursuant to the FLSA, 29 U.S.C. § 216, Plaintiff is entitled to recover the unpaid overtime wage differential, reimbursements, liquidated damages in an amount equal to unpaid overtime, attorneys' fees, and the costs of litigation.

47. In response to request for compensation, Plaintiff was treated disparately and less favorably than Caucasian employees; and terminated shortly thereafter in retaliation for expressing legally entitled compensation and payment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that:

1.      Process issue against the Defendant, requiring it to answer within the time period specific by applicable law;

2.      That after the discovery process, this case be heard on its merits;

3.      With respect to Plaintiff's claims, Plaintiff prays that the Court enter a judgment:

a.  Declaring that the acts and practices complained of herein are in violation of the aforementioned laws;

b.  Enjoining and permanently restraining these violations of aforementioned laws;

c.  Directing Defendant to take affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff, or those similarly situated to Plaintiff, in employment opportunities;

d.  Awarding Plaintiff a full award of back pay damages in amounts to be determined by the jury;

e.  Awarding Plaintiff a substantial amount of front pay damages or reinstatement;

f.  Awarding Plaintiff liquidated damages;

g.  Directing Defendant to pay Plaintiff compensatory and punitive damages in an amount to be determined at trial, but to cumulatively exceed $500,000.00.

h.  Awarding Plaintiff the costs reasonable attorneys' fees, as provided by the applicable statutes;

i.  That the Court award any declaratory and/or injunctive relief that may be available; and

j.  Granting such other and further relief as this Court deems necessary and proper.

Respectfully submitted,

/s Brian C. Winfrey
Brian C. Winfrey, Esq. (BPR 025766)
THE WINFREY FIRM
2021 Richard Jones Rd. Ste 310
Nashville, TN 37215